# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ANN MUSGROVE-KELLY,            )
                               )
    Plaintiff,            )
                               )
vs.                            )   Case No.  CIV-16-853-R
                               )
COMMISSIONER OF SOCIAL         )
SECURITY ADMINISTRATION,       )
                               )
    Defendant.            )

## REPORT AND RECOMMENDATION

Ann Musgrove-Kelly (Plaintiff) brings this action for judicial review of the Commissioner of Social Security's (Commissioner) final decision that she was not "disabled" under the terms of the Social Security Act. Doc. 4. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). United States District Judge David L. Russell has referred the matter to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and Fed. R. Civ. P. 72(b). Doc. 3.

After a careful review of the record (AR), the parties' briefs, and the relevant authority, the undersigned recommends the entry of judgment affirming the Commissioner's final decision. *See* 42 U.S.C. § 405(g).

I.  **Administrative determination.**

   A.  **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just h[er] underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

   B.  **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that [s]he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

**C. Relevant findings.**

**1. Administrative Law Judge (ALJ) findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis in order to decide whether Plaintiff was disabled during the relevant time period. AR 79-92; *see* 20 C.F.R. § 404.1520(a)(2); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) had one impairment—degenerative disc disease of the lumbar spine—that was severe and five impairments—hypertension, restless leg syndrome, degenerative disc disease of the cervical spine, major depressive disorder, moderate, and social anxiety disorder, moderate—that were nonsevere;

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity[1] (RFC) to perform light work, lifting/carrying and pushing/pulling no more than twenty pounds occasionally and ten pounds frequently, standing/walking and sitting for six hours out of an eight-hour day, and only occasionally bending/stooping or crouching;

(4) was able to perform her past relevant work; and so,

(5) had not been under a disability, as defined in the Social Security Act, from February 25, 2013—her alleged onset of

---

[1] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

> disability date—through November 7, 2014, the date of the ALJ's decision.

AR 79-92.

### 2. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council found no reason to review that decision, so the ALJ's decision is the Commissioner's final decision in this case. *Id.* at 1-4; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (citation omitted). A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (internal quotation marks omitted).

### B. Issues for judicial review.

Plaintiff, appearing through counsel, contends the ALJ's decision is erroneous because: (1) "[t]he ALJ's treatment of the doctors opinions, both treating and nontreating, was flawed," Doc. 14, at 2; (2) the ALJ "fail[ed] to properly consider affective and anxiety disorders and migraines," *id.* at 8 (bolding omitted and capitalization altered); and (3) "RFC error." *Id.* at 10 (same). She raises additional issues in narrative fashion. *Id.* at 2-12. This report addresses her assertions in the order presented.

### C. Analysis.

#### 1. Whether the ALJ's treatment of certain medical opinion evidence was flawed.

##### a. Dr. Wright.

Plaintiff first claims the ALJ rejected an opinion by Dr. Wright "because the ALJ said 'as I do not find he treated the claimant I do not consider whether to accord his opinion controlling weight.' AR 89." *Id.* at 2. She contends the ALJ "is wrong, Dr. Wright did treat [her]," *id.*, and, to support this contention, relies on the following statement made by Dr. Wright in a September 12, 2013 "Workers Compensation Progress Report": "I'm not certain why but her appointment by Dr. Remondino was cancelled today and we were asked to evaluate and treat her." AR 234. She also points to Dr. Wright's reference to a physical examination and X-rays and contends he "made recommendations

5

for further treatment." Doc. 14, at 2. She concludes, "The report refutes the ALJ's findings." *Id.*

In addition, Plaintiff claims the ALJ's "logic in how he rejected Dr. Wright's opinion is horribly flawed because he gave great weight to the agency doctors and they certainly have never treated [her]. AR 89." *Id.* In Plaintiff's view, "[w]ith that logic (the requirement for *treatment* to consider whether to accord controlling weight) the agency opinions could never have been given any weight and should have been rejected too if it were true, or if that was his belief on nontreating opinions, but it is obviously and errantly not and error for which remand should occur." *Id.* at 2-3.

Plaintiff asks the court to remand this matter "for a proper evaluation of Dr. Wright's opinion" because "[a]ccording little weight to a doctor's opinion is the same as effectively rejecting that opinion and the opinions of examining physicians are presumptively entitled to more weight." *Id.* at 3. She recites the treating physician rule, cites applicable case law and regulatory factors, *id.* at 3-4, and maintains the ALJ "obviously never even considered [or] applied [the rule and the requisite factors] properly in his evaluation." *Id.* at 4.

Plaintiff made these claims without preamble.[2] She failed to recount her treatment history, even to the extent of informing the court about the roles

---

[2] Apart from reciting the administrative history of her case, Plaintiff told the court only that she had alleged disability "due to a back impairment,

6

Drs. Wright and Remondino played in her treatment, including where they—and the "agency doctors," *id.* at 2—fit in the longitudinal timeline. She leaves it to the court to connect the dots. This failure only exacerbates the inadequacies inherent in her issue-spotting briefing, a method she continues to follow in concluding her challenge to the ALJ's assessment of Dr. Wright's opinion evidence:

> Dr. Wright found sedentary work. The agency and ALJ found light work. Dr. Wright found on Xray, an objective test, that he could not verify a solid fusion and his exam was in September, 2013. AR 89, 233-234. That is listing level disability. *See* 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d). 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). The ALJ said he considered listing 1.04, but his analysis is defective as [Plaintiff] does not have arachnoiditis. AR 8. Using arachnoiditis is misdirection by the ALJ.

*Id.* at 4.

The only issue Plaintiff has adequately framed for review is whether the ALJ erred in finding that Dr. Wright did not treat her and declining, on that basis, to consider whether his opinion merited controlling weight. Plaintiff's sparse references—in a brief already devoid of foundational factual information—to findings by Dr. Wright and "[t]he agency" do not provide an

---

degenerative disc disease of the lumbar spine, high blood pressure, and anxiety," Doc. 14, at 1; that she was fifty-two years old at the time of her administrative hearing; that she had completed a year of college; and, that she had been employed "as a money counter at a casino, department manager, and childcare worker." *Id.* at 2.

7

adequate basis for review of either the legal or evidentiary sufficiency of the ALJ's ultimate analysis of Dr. Wright's opinion evidence. *Id.* Similarly, her allusions to a "listing-level disability," to "listing 1.04," and to "arachnoiditis," *id.*, are equally skeletal and insufficient to compel review.[3] *See id.*

Plaintiff's failure to develop and support an argument is sufficient to reject it. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (finding appellate argument insufficiently developed and declining to "speculate on [appellant's] behalf"); *see also Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (holding inadequately framed or developed "perfunctory complaints" are insufficient to invoke review); *Effinger v.Callahan*, No. 97-7001, 1997 WL 446724, at *2 (10th Cir. Aug. 6, 1997) (unpublished op.) (The court "will not comb through the record where counsel has not provided specific references tied to an argument.") (citing *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992)).

As to the claim Plaintiff has developed, she has not demonstrated error. Because the ALJ knew Plaintiff received workers' compensation benefits, he reviewed the medical opinions in connection with her workers' compensation claim and found:

---

[3] The undersigned recognizes the Commissioner responded to various arguments, no doubt in an abundance of caution.

8

> On September 12, 2013, Michael H. Wright, M.D., treated [Plaintiff] on *one* occasion *in connection with her claim for workers' compensation benefits*. Dr. Wright was able to review the medical records of [Plaintiff] and the Court had asked him *to prepare a workers' compensation progress report*. Dr. Wright was uncertain why the Court asked him to prepare a report and evaluate [Plaintiff] after cancellation of her appointment with operating physician Dr. Remondino that day. However, Dr. Wright proceeded and his physical examination showed as follows. [Plaintiff] ambulated with a normal heel/toe gait. Her incisions had healed. She has no motor or sensory deficits to either lower extremity and little in the way of radicular complaints. X-rays showed good position and alignment of her internal fixation device without evidence of hardware loosening; it was uncertain whether there had been fusion based on the plain x-rays. Dr. Wright recommended follow-up with Dr. Remondino, and a computed tomography scan to determine if there had been fusion after surgery. On September 12, 2013, Dr. Wright opined that [Plaintiff] should be released to sedentary work with no lifting more than ten pounds, but he noted maximum medical improvement would be pending treatment (Exhibit 3D, pages 6-8).
>
> It does not appear that Dr. Wright did actually treat [Plaintiff], as he prescribed no medicines nor ordered any further imaging or return to his care after he took x-rays the day he evaluated [Plaintiff] and reviewed her records. As I do not find he treated [Plaintiff] I do not consider whether to accord his opinion controlling weight.

AR 89 (emphasis added).

Under regulations effective from August 24, 2012 until March 26, 2017,—and, so, the regulations in effect at the time of the ALJ's decision, *id.* at 92, and the Notice of Appeals Council Action, *id.* at 1—"[i]f [the SSA] f[ound] that *a treating source's* opinion on the issue(s) of the nature and severity of [claimant's] impairment(s) [wa]s well-supported by medically acceptable

9

clinical and laboratory diagnostic techniques and [wa]s not inconsistent with the other substantial evidence in [claimant's] case record, [the SSA] w[ould] give it controlling weight." 20 C.F.R. § 404.1527(c)(2) (emphasis added). This is the controlling weight analysis the ALJ declined to undertake because he "d[id] not find [Dr. Wright] treated [Plaintiff]." AR 89. In claiming error, Plaintiff only parses the meaning of "treat," Doc. 14, at 2-4, and fails to establish[4] under the following (then effective) SSA regulation, that Dr. Wright was a "treating source" whose opinion could receive controlling weight:

> Treating source means [claimant's] own physician, psychologist, or other acceptable medical source who provides . . . or has provided [claimant], with medical treatment or evaluation *and who has*, or has had, *an ongoing treatment relationship* with [claimant]. Generally, [the SSA] will consider that [claimant] ha[s] an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that [claimant] see[s], or ha[s] seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [claimant's] medical condition(s). [The SSA] may consider an acceptable medical source who has treated or evaluated [claimant] only a few times or only after long intervals (e.g., twice a year) to be [claimant's] treating source if the nature and frequency of the treatment or evaluation is typical for [claimant's] condition(s). [The SSA] will not consider an acceptable medical source to be [claimant's] treating source if [claimant's] relationship with the source is not based on [claimant's] medical need for treatment or evaluation, but solely on [claimant's] need to obtain a report in support of [claimant's] claim for disability. In such a case, [the

---

[4] *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) ("[T]heories raised for the first time in objections to the magistrate judge's report are deemed waived.").

SSA] will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 404.1502 (emphasis added).[5]

Plaintiff fails to demonstrate error by the ALJ in finding that Dr. Wright did not treat Plaintiff and declining, on that basis, to "consider whether to accord his opinion controlling weight . . . ." AR 89.

### b. State agency experts.

Next, Plaintiff submits "[s]he had a fractured fusion until it solidified" and "[t]hat is really what makes the ALJ's findings so errant." Doc. 14, at 5. She argues "[t]he agency opinions" "were not really 'opinions'" because "the nonexamining agency doctors were prognosticating which is not a current RFC nor a true medical opinion according to the law." *Id.* To the contrary, as was the case when the State agency experts provided their opinions in this matter,

> [w]hen the application is being adjudicated . . . before the impairment has lasted 12 months, the nature of the impairment, the therapeutic history, and the prescribed treatment will serve as the basis for determining whether the impairment is expected to result in death or will continue to prevent the individual from engaging in any SGA (or any gainful activity) for the additional number of months needed to make up the required 12 months duration . . . . [A] projection of how severe the impairment will be 12 months after onset may also require an estimate of the claimant's residual functional capacity (RFC) as of the 12th month after onset (i.e., the impairment falls short of the level of severity

---

[5] In comparison, the ALJ identified Justin Dufner, D.O., as a treating source and analyzed his opinions accordingly. AR 87-89.

depicted by the Listing, yet there are significant limitations to performing basic work-related functions).

SSR 82-52, at *2, 1982 WL 31376 (1982). Here, as the ALJ found, the State agency experts' RFC was "an assessment for February 24, 2014,[6] or twelve months after onset (onset February 25, 2013) (See Exhibit 4A, page 10)." AR 90.

Plaintiff fails to demonstrate that the opinions of the State agency experts—the opinions given "the greatest weight" by the ALJ, *id.* at 89—were not "true medical opinion[s] according to the law." Doc. 14, at 5.

### c. Dr. Remondino.

Plaintiff identifies Dr. Remondino as her "treating surgeon," *id.* at 6, and maintains "the ALJ never weighed the treating neurosurgeon's opinion." *Id.* at 7. She accurately notes, *id.*, the SSA's requirement that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, at *7, 1996 WL 374184 (1996). Nonetheless, she fails to point to any opinion expressed by Dr. Remondino about Plaintiff's functional capacity that the ALJ overlooked. Doc. 14, at 6-8. Instead, she alleges "that the ALJ's opinion does not . . . analyze

---

6     To the extent Plaintiff—who bears the burden of proof at step three—contends she met the criteria for a listed impairment during this "entire" twelve-month period, Doc. 14, at 5, she fails to provide the requisite support for such a claim. The same holds true for a "closed period." *Id.*

12

Dr. Remondino's findings of only 1+ reflexes at the knees and ankles, which is the loss described by the listing. AR 511." *Id.* at 6.[7] Plaintiff is mistaken. After a thorough discussion and analysis of Dr. Remondino's July 10, 2014 medical findings, the ALJ concluded: "Range of motion is limited and the claimant does experience ongoing pain but there is absence of neurologic deficit." AR 85. Likewise, in addressing whether Plaintiff had an impairment or combination of impairments that met or medically equaled the severity of a listed impairment, the ALJ determined that "[t]he medical evidence indicates that the claimant does not have motor loss with accompanying sensory or reflex loss as required under Section 1.04A." *Id.* at 83.

In sum, Plaintiff has not established that the ALJ neglected to analyze Dr. Remondino's medical findings bearing on "listing 1.04." Doc. 14, at 4. And, contrary to Plaintiff's claim of error, *id.* at 6, the ALJ plainly accepted Dr. Remondino's finding that Plaintiff "experience[s] ongoing pain." AR 85. As to Plaintiff's remaining assertions, they are grounded only on speculation and on Plaintiff's own opinion that "[s]he certainly should not be doing light work." Doc. 14, at 7.

---

[7]  Presumably, Plaintiff is referring, as before, to "listing 1.04." Doc. 14, at 4.

13

## 2. Whether the ALJ failed to properly consider affective and anxiety disorders and migraines.

Plaintiff claims, "First of all migraines are never mentioned, nor analyzed for RFC even if nonsevere which is error." *Id.* at 8. The claim—made in an evidentiary vacuum—is not adequately developed for review. *See Effinger*, 1997 WL 446724, at *2.

Then, Plaintiff claims, "Dr. Holden has been treating depression since 2013. AR 424. The ALJ says it is not severe because 'medication is controlling her condition.' AR 85. No it is not. The evidence the ALJ says supports such a finding does not support it." Doc. 14, at 8.

Plaintiff confuses the ALJ's credibility assessment finding regarding her anxiety medications, *see* AR 85-86, with his assessment of the severity of her mental impairments and maintains "his flawed reasoning is not the proper test for severity." Doc. 14, at 8. She ignores, and, so, does not dispute, what is the ALJ's actual analysis of her mental impairments. *See* AR 80-82. Similarly, when she contends "[t]he problem [also] lies with . . . th[e] ALJ['s] subsequent failure to properly consider the mental health . . . impairments at steps four and five[8] and in determining RFC," Doc. 14, at 10, she not only fails to support

---

[8] The ALJ did not reach step five in his decision in this case. *See* AR 91-92.

14

her argument but she ignores, and, so again, does not dispute, the ALJ's RFC assessment of her nonsevere mental impairments. *See* AR 82.

### 3. Whether there was RFC error.

Plaintiff's claim here is as follows:

> [T]he RFC does not encompass all of the limitations from all of [Plaintiff's] impairments and those she will possess while on the job as already noted. Indeed, all of the impairments are certainly not considered in RFC, because there is no discussion of the actual consideration of these limitations on RFC. This is a completely internally inconsistent conflict. The ALJ failed to explain his inconsistency which is error.
>
> But, the problem is also how these impairments were translated into RFC. Again, the ALJ found a light work RFC, *but with no proper limitations . . . .*

Doc. 14, at 10-11.

Limitations "already noted," *id.* at 10, by Plaintiff have already been addressed in this report. And, in this claim of error, Plaintiff fails to identify *any* omitted limitation—"already noted," *id.*, or otherwise—leaving the court with nothing to review.

## III. Recommendation and notice of right to object.

The undersigned recommends the entry of judgment affirming the Commissioner's final decision.

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of Court by May 2, 2017, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The undersigned

further advises the parties that failure to make a timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 12th day of April, 2017.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE